IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:17-CV-219-RJC

| | |
|---|---|
| KIMBERLY TRIPLETT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| NANCY A. BERRYHILL, | ) ORDER |
| Acting Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |

**THIS MATTER** comes before the Court on the parties' cross Motions for Summary Judgment, (Doc. Nos. 12, 15); and the parties' briefs and exhibits in support. The motions are ripe for adjudication.

I. BACKGROUND

A. Procedural Background

Kimberly Triplett ("Plaintiff") seeks judicial review of Nancy A. Berryhill's ("Defendant" or "Commissioner") denial of her social security claim. Plaintiff filed an application for Disability Insurance Benefits under Title II of the Social Security Act ("SSA") on June 7, 2013, alleging a disability onset date of January 1, 2013. (Doc. Nos. 11 to 11-1: Administrative Record ("Tr.") 19). Her application was denied first on October 10, 2013, (Tr. 103), and upon reconsideration on January 13, 2014. (Tr. 109). Plaintiff filed a timely request for a hearing on January 31, 2014, (Tr.

1

109), and an administrative hearing was held by an administrative law judge ("ALJ") on November 12, 2015. (Tr. 37, 119).

Following this hearing, the ALJ found that Plaintiff was not disabled under the SSA. (Tr. 16–36). Plaintiff requested a review of the ALJ's decision, but the Appeals Council denied Plaintiff's request for a review. (Tr. 1). After having exhausted her administrative remedies, Plaintiff now seeks judicial review of Defendant's denial of her social security claim in this Court.

B.   Factual Background

The question before the ALJ was whether Plaintiff was disabled under Sections 216(i) and 223(d) of the SSA. (Tr. 19). To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the SSA.[1] Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). Plaintiff alleges that her disability began on January 1, 2013 due to a combination of physical and mental impairments.[2]

After reviewing Plaintiff's record and conducting a hearing, the ALJ found that Plaintiff did not suffer from a disability as defined in the SSA. (Tr. 31–32). In reaching his conclusion, the ALJ used the five-step sequential evaluation process

---

[1] Under the SSA, 42 U.S.C. § 301, et seq., the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

[2] These impairments were diabetes, neuropathy, pleurisy, severe chronic obstructive pulmonary disease ("COPD"), and insomnia. (Tr. 19, 173, 193).

2

established by the Social Security Administration for determining if a person is disabled. The Fourth Circuit has described the five-steps as follows:

> [The ALJ] asks whether the claimant: (1) worked during the purported period of disability; (2) has an impairment that is appropriately severe and meets the duration requirement; (3) has an impairment that meets or equals the requirements of a listed impairment and meets the duration requirement; (4) can return to her past relevant work; and (5) if not, can perform any other work in the national economy.

Radford v. Colvin, 734 F.3d 288, 290–91 (4th Cir. 2013) (paraphrasing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant has the burden of production and proof in the first four steps. Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015). However, at the fifth step, the Commissioner must prove that the claimant is able to perform other work in the national economy despite her limitations. See id.; see also 20 C.F.R. § 416.960(c)(2) (explaining that the Commissioner has the burden to prove at the fifth step "that other work exists in significant numbers in the national economy that [the claimant] can do"). In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 31–32).

In reaching his decision, the ALJ first concluded at steps one through three that Plaintiff was not employed, that she suffered from severe physical and mental impairments,[3] and that her impairments did not meet or equal any of the impairments listed in the Administration's regulations. (Tr. 21–27). Therefore, the ALJ examined the evidence of Plaintiff's impairments and made a finding as to Plaintiff's Residual Functional Capacity ("RFC"). The ALJ found that Plaintiff has

---

[3] The ALJ concluded that Plaintiff has the following severe impairments: diabetes mellitus, neuropathy, COPD, and depression. (Tr. 21).

3

"the [RFC] to perform a full range of light work . . . except she can frequently climb, balance, stoop, crouch, kneel and/or crawl. She must avoid concentrated exposure to dust, fumes, and gases." (Tr. 27). Having established Plaintiff's RFC, the ALJ concluded that Plaintiff could not perform the work in which she had previously been employed. (Tr. 30). Therefore, the ALJ proceeded to the fifth and final step of the process: determining whether, given the limitations embodied in her RFC, Plaintiff could perform any work that existed in significant numbers in the national economy. (Tr. 31–32). To make that determination, the ALJ relied on the testimony of a Vocational Expert ("VE"). The VE testified that Plaintiff could perform three representative occupations that exist in significant numbers in the national economy: "marker,"[4] "router,"[5] and "sales attendant."[6] (Tr. 31). All of these jobs involve "light exertion" according to the DOT.[7] The ALJ accepted the

---

[4] DOT 209.587-034, 1991 WL 671802.
[5] DOT 222.587-038, 1991 WL 672123.
[6] DOT 299.677-010, 1991 WL 672643.
[7] Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567.

4

VE's testimony and concluded that Plaintiff's impairments did not prevent her from working; consequently, Plaintiff's application for Title II benefits was denied. (Tr. 31–32).

## II. STANDARD OF REVIEW

The Court must decide whether substantial evidence supports the final decision of the Commissioner and whether the Commissioner fulfilled her lawful duty in her determination that Plaintiff was not disabled under the SSA. See 42 U.S.C. §§ 405(g) and 1382(c).

The SSA, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The district court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). As the SSA provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, the Fourth Circuit noted that "substantial evidence" has been defined as being "more than a scintilla and [do]ing more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence . . . .").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays, 907 F.2d at 1456; see also Smith v. Schweiker, 795 F.2d at 345; Blalock, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome–so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

Plaintiff alleges that the ALJ failed to (1) perform a function-by-function assessment of Plaintiff's ability to stand and walk, and (2) perform a proper treatment compliance analysis as outlined in 20 C.F.R. § 404.1530 and as a result, failed to adequately account for Plaintiff's COPD symptoms in her RFC. The Court agrees with Plaintiff's first allegation of error, and therefore, remands on this basis.

Plaintiff argues that the ALJ failed to provide a logical bridge between the evidence and his conclusion that Plaintiff could perform the standing and walking requirements of light work. The Court agrees.

6

According to Social Security Ruling 96-p, ALJs must assess a claimant's work-related abilities on a function-by-function basis and include a narrative discussion explaining how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence. SSR 96-p, 1996 WL 374184, at *1, *7. Additionally, an ALJ must provide "a narrative discussion describing how the evidence supports" his "explanation of the varying degrees of weight he gave to differing opinions concerning [the claimant's] conditions and limitations." Monroe v. Colvin, 826 F.3d 176, 190 (4th Cir. 2016) (internal citation and quotation marks omitted). When a narrative discussion is missing, and a meaningful factual development is lacking, district courts may not mine facts from the record to later construct a logical bridge. Marshall v. Colvin, No. 3:14-CV-00608, 2016 WL 1089698, at *2 (W.D.N.C. Mar. 21, 2016) (citing Brown v. Colvin, No. 14-2106, 2016 WL 502918, at *2 (4th Cir. Feb. 9, 2016)). There is no per se rule requiring remand for failure to perform an explicit function-by-function analysis; rather, "remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015).

Here, the Court finds that this case presents a classic example of an ALJ failing "to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record." Mascio, 780 F.3d at 636. At her hearing, Plaintiff testified that she experiences constant neuropathy in her feet upon weight

7

bearing that causes her to lose balance and requires her to sit down to relieve the burning sensations. (Tr. 47). Furthermore, she testified that she is only able to stand for about four minutes and walk for a few steps at a time before needing to take a break. (Tr. 50). While the Court notes that there does seem to be conflicting evidence in the record that contradicts Plaintiff's testimony,[8] the Court is prohibited from mining the record to build a consistent narrative that supports the ALJ's determination. Marshall, 2016 WL 1089698, at *2. But on the flip side, the Court notes that there is also evidence in the record that supports Plaintiff's testimony.[9] The Court is at a loss for how to synthesize the record evidence with the ALJ's findings; this is because the ALJ failed to construct a logical bridge from the evidence regarding Plaintiff's ability to stand and walk (both her personal testimony and record medical evidence) and his conclusion that she is able to perform work which requires her to be on her feet six hours of an eight-hour work day, see 20 C.F.R. § 404.1567(b) (articulating the demands of light work). Monroe, 826 F.3d at 189 (noting that an ALJ must "'build an accurate and logical bridge from the evidence to his conclusion' that [the claimant's] testimony was not credible" (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000))).

---

[8] Dr. Girmay, who performed two consultative examinations on Plaintiff, reported that Plaintiff could walk 100 feet. (Tr. 24, 328–30).

[9] (See, e.g., Tr. 243 (record from Helping Hands Clinic ("HHC") from 2012 noting that "she is experiencing burning of extremities" and that "[h]er main issue is the continued burning in her feet at night and some during the day"); Tr. 273 (HHC note: "States when she wears tennis shoes instead of flip flops she has blisters form on the bottom of her feet."); Tr. 300 (HHC Note: "Chronic Problems: Neuropathy due to secondary diabetes"); Tr. 283 (HHC note: "neuropathy is worsening"); Tr. 329 (Dr. Girmay's physical assessment notes: "severe peripheral neuropathy")).

In Mascio, the Fourth Circuit found that an ALJ fails to adequately explain his decision where he states that the claimant's testimony generally is not credible and subsequently credits some testimony by including limitations in the RFC, but not other testified-to limitations without explanation:

> Yet in determining Mascio's residual functional capacity, the ALJ chose to credit some, but not all, of her statements.
> For example, Mascio testified that "she cannot walk more than about 100 feet, can stand for only 30 minutes, and can only lift about 15 pounds." It appears that the ALJ credited the second statement, by including the sit/stand option in his finding as to residual functional capacity. But despite Mascio's assertion that she was limited in her ability to walk and lift, the ALJ found that Mascio could perform "light work," which includes lifting up to 20 pounds and performing "a good deal of walking." Nowhere, however, does the ALJ explain how he decided which of Mascio's statements to believe and which to discredit, other than the vague (and circular) boilerplate statement that he did not believe any claims of limitations beyond what he found when considering Mascio's residual functional capacity. The ALJ's lack of explanation requires remand.

Mascio, 780 F.3d at 639–40 (internal citations omitted). Here, the ALJ committed the same error which the Fourth Circuit found problematic in Mascio. In assessing Plaintiff's credibility, the ALJ noted that he found Plaintiff's testimony "regarding her medication from Foothills and Helping Hands reduced her credibility." (Tr. 28). Indeed, Plaintiff changed her testimony regarding the frequency with which she picked up her medication from Foothills. (Tr. 54–61). The ALJ discussed how Plaintiff changed her testimony and concluded that he "did not consider the testimony to be credible as regards the nebulizer use at the frequency alleged by the claimant." (Tr. 28). Yet later, when determining Plaintiff's RFC, he gave credence to her testimony regarding the amount that Plaintiff can lift. Although Plaintiff

9

had testified that she could pick up 12–15 pounds, (Tr. 28), the medical consultants with the State agency determined that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently, (Tr. 29). Nevertheless, the ALJ found that "with claimant testimony and additional evidence not available at the time of the consultant's review, the claimant can only lift 20 pounds occasionally and 10 pounds frequently." (Tr. 29). And accordingly, he adopted this limitation into her RFC by limiting Plaintiff to "light work," which requires the ability to lift "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," 20 C.F.R. § 404.1567(b). (Tr. 27). Therefore, the ALJ explained that he found Plaintiff's testimony credible regarding her lifting abilities and incredible regarding the frequency of her nebulizer use, but he provided no explanation regarding how he weighed Plaintiff's testimony regarding her walking and standing capabilities. The Court can assume that he found this testimony not credible since he found that Plaintiff could perform light work, which includes "a good deal of walking." Mascio, 780 F.3d at 640 (quoting 20 C.F.R. § 416.967(b)). Other than the ALJ's generalized statement that he found that Plaintiff's testimony regarding her nebulizer usage and medication reduced her credibility, and the boilerplate language frequently used in ALJ Social Security decisions for discounting a claimant's credibility,[10] the Court is left to guess why the ALJ did not include an

---

[10] This boilerplate language is the following: "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statement concerning the intensity, persistence, and limiting effects of

10

additional limitation in Plaintiff's RFC that would account for her testified-to difficulties with standing and walking.[11]  This is especially true when there is some evidence in the record that supports this.  Accordingly, "[t]he ALJ's lack of explanation requires remand."  Mascio, 780 F.3d at 640.

## IV.  CONCLUSION

The Court remands on Plaintiff's first allegation of error, but the ALJ should further note Plaintiff's other objection to his decision on remand.  On remand, the ALJ should more fully explain why Plaintiff does not need a walking and/or standing limitation in her RFC.

---

these symptoms are not entirely credible for the reasons explained in this decision." (Tr. 28).

[11] The ALJ did note in his RFC discussion that, "[i]n evaluating the opinion evidence, the undersigned notes that none of the claimant's treatment physicians imposed specific functional limitations for the period involved." (Tr. 28).  Additionally, earlier in his decision at Step Two, the ALJ noted that Dr. Girmay, found that Plaintiff's limitations were "moderate from a physical point of view," (Tr. 22), and found that Plaintiff "could walk 100 feet without difficulty," (Tr. 24).  But the ALJ did not sufficiently link this aspect of Dr. Girmay's opinion to his conclusion regarding Plaintiff's walking or standing abilities.  In fact, the ALJ noted that he gave "little weight" to Dr. Girmay's opinion, finding that Dr. Girmay "relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported." (Tr. 30). In discounting Dr. Girmay's opinion, the ALJ reasoned that "as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints." (Id.).  This is perplexing, considering that Dr. Girmay's opinion that Plaintiff could walk 100 feet seems to undercut Plaintiff's testimony regarding her walking and standing abilities and support the ALJ's conclusion that no walking or standing limitation was needed in the RFC.  Again, this points to the fact that the Court is left to guess at how the ALJ arrived at his conclusion—the exact type of guesswork that this Court is prohibited from engaging in.  Patterson v. Comm'r of Soc. Sec. Admin., 846 F.3d 656, 663 (4th Cir. 2017) (admonishing ALJs to "[s]how [their] work" so that district courts can conduct meaningful reviews of ALJ decisions).

11

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff's Motion for Summary Judgment, (Doc. No. 12), is **GRANTED**;

2. Defendant's Motion for Summary Judgment, (Doc. No. 15), is **DENIED**;

3. Defendant's Consent Motion for Extension of Time, (Doc. No. 14), is **DENIED as moot**;

4. This matter is **REMANDED** for a new hearing consistent with this Order; and

5. The Clerk of Court is directed to close this case.

Signed: March 22, 2019

Robert J. Conrad, Jr.
United States District Judge